## Grievance of David Regan

[571 A.2d 664]

No. 85-542

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed December 22, 1989

*Michael R. Zimmerman,* VSEA Staff Attorney, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, *Michael Seibert,* Assistant Attorney General, and *Richard Cortese* (On the Brief), Montpelier, for Defendant-Appellee.

**Peck, J.** Grievant David Regan appeals from an order of the Vermont Labor Relations Board (Board) affirming his dismissal from employment as a Human Services Aide. We affirm.

Grievant had been employed as a classified employee of the state since 1968, and, beginning in August, 1979, as a Human Services Aide for the Department of Social Welfare, until his dismissal effective August 27, 1984. At the time of his dismissal, he worked full time as a member of one of two three-person teams, each composed of a case manager who was an employee of the Department of Employment and Training, a social worker and an aide.

The Board found that, prior to the events which led to his dismissal, grievant had been informed of the Department's so-called "three-contact rule," under which an aide is precluded from having more than three contacts with any one client unless a social worker is present, in order to keep the aide from undertaking activities which could be viewed as professional counseling. Group meetings and routine services, such as furnishing transportation to appointments, are not counted as "contacts" under the rule. The Board also found that grievant specifically had been advised that he could not guarantee confidentiality to a client who was threatening harm to himself or to others.

In the first half of 1984, grievant and his supervisor had several meetings to discuss grievant's performance. The Board found that grievant was informed during the meetings that he was directly accountable to his supervisor and that he should communicate any problems to him. At a June 7, 1984 meeting grievant expressed uncertainty about whether he wanted to continue meeting with his supervisor without a Vermont State Employee's Association representative present, and he was told that the supervisor would permit a VSEA representative to be present at any meeting at grievant's request. Grievant requested his supervisor to put the performance issues they had discussed in writing. The supervisor's June 22, 1984 memorandum warned grievant, among other things, to be sure to report to the other team members and to his supervisor about his activities with clients, and to avoid adopting the role of client advocate in opposition to the agency's management systems.

Grievant was made aware of a new client's homicidal and suicidal thoughts at several group meetings which grievant led in late July and early August, 1984. The client disclosed that his son had been sexually abused by the client's brother, and that he had considered killing his brother. Grievant had several discussions of this matter alone with the client, in violation of the three-contact rule. Without disclosing the client's name, he inquired of a social worker, the Department of Social and Rehabilitation Services, a psychiatrist, and a private mental health counselor whether the client's brother could be required to undergo counseling without criminal prosecution and publicity. Grievant did not discuss this client's problems with the social worker on his team, or with his supervisor.

When the client's homicidal and suicidal threats came to the attention of the social worker and the supervisor on August 14, 1984, grievant 'declined to discuss the client's behavior at a meeting called that day in the supervisor's office with the social worker and another aide.

In the week following this meeting, the supervisor further investigated these events, and informed grievant that he would be reporting grievant's conduct to his superiors for a decision on discipline. On August 22, 1984, the supervisor called a meeting to discuss grievant's conduct, at which meeting grievant was represented by a VSEA field representative. Grievant was dismissed by letter dated August 27, 1984.

The grievance filed with the Vermont Labor Relations Board alleged that there was no just cause for dismissal, that the State failed to adhere to the progressive discipline provisions of the contract and that dismissal was so severe a sanction as to constitute an abuse of discretion. The grievance document did not claim that the State had failed to advise grievant of his right to union representation at the August 14th meeting, although, grievant argues, that issue was raised at the hearing before the Board and in the post-hearing memoranda. The Board determined that the issue of the alleged failure to advise grievant of his right to union representation was not timely raised because it did not appear in the grievance document, but went on to find that the purpose of the August 14th meeting was not to deter-

mine whether grievant should be disciplined, and therefore that he was not entitled to notice of a right to union representation. This is the only issue raised on appeal. In its decision, the Board also found that grievant's actions constituted just grounds for dismissal, and that in light of grievant's "deeply ingrained attitude concerning the probity of those above him" the bypassing of progressive discipline was not inappropriate. Grievant, however, has not asserted on appeal any deficiency in these latter determinations. Compare *In re Gadreault*, 152 Vt. 119, 564 A.2d 605 (1989) (employer's failure to impose progressive discipline not violative of grievant's rights where steps followed gave employee ample warning that further dereliction could lead to dismissal).

On appeal, grievant first takes issue with the Board's conclusion that it lacked jurisdiction to consider the claim that the State had failed to advise grievant of his right to union representation at the August 14, 1984 meeting. Grievant argues that, to the contrary, the issue was adequately raised during the hearing before the Board. Grievant then argues on the merits that he should not be disciplined for refusing to answer his supervisor's questions at the August 14, 1984 meeting because the meeting was not lawful as he had not been warned of his right to VSEA representation.

■■ While it is undoubtedly true that a litigant may not present issues to this Court which were not previously placed before the Board for its consideration, *In re McMahon*, 136 Vt. 512, 514, 394 A.2d 1136, 1137 (1978), it is a closer question as to whether grievant in this case could be said to have adequately raised the issue during the hearing before the Board. We need not reach this question of waiver, however, because our review of the record reveals that the Board had sufficient evidence before it to conclude that the August 14, 1984 meeting in the supervisor's office was not called for the purpose of imposing discipline on grievant. Therefore, notice to grievant of his entitlement to a VSEA representative was not required by the contract.

The Board may infer an employer's subjective motivation from circumstantial evidence. *Kelley v. Day Care Center, Inc.*, 141 Vt. 608, 613, 451 A.2d 1106, 1108 (1982). The evidence in this case supports the inference that the August 14, 1984 meeting was concerned with determining how to address the client's homicide and suicide threats, and how to achieve the voluntary reporting of the asserted child abuse, rather than with disciplining grievant. Moreover, the evidence showed that grievant had recently been advised that he could have a VSEA representative present in any discussion, but he did not request that option at the August 14, 1984 meeting.

*Affirmed.*